# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# (SHERMAN DIVISION)

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 19-40426 |
| CFO MANAGEMENT | § | |
| HOLDINGS LLC,[1] | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |
| | § | |
| | § | |
| DAVID WALLACE, CHAPTER 11 | § | |
| TRUSTEE FOR THE BANKRUPTCY | § | |
| ESTATE OF CFO MANAGEMENT | § | |
| HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 21-04019 |
| | § | |
| TGB FUNDING, LLC | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

## TRUSTEE'S RESPONSE TO TBG FUNDING LLC'S
## MOTION TO DISMISS COMPLAINT

---

[1] The following entities' bankruptcy cases and estates have been substantively consolidated with that of Debtor CFO Management Holdings, LLC (EIN# XX-XXX6987) for all purposes (see Docket No. 248): Carter Family Office, LLC (Case No. 19-40432); Christian Custom Homes, LLC (Case No. 19-40431); Double Droptine Ranch, LLC (Case No 19-40429); Frisco Wade Crossing Development Partners, LLC (Case No. 19-40427); Kingswood Development Partners, LLC (Case No. 19-40434); McKinney Executive Suites at Crescent Parc Development Partners, LLC (Case No. 19-40428); North-Forty Development LLC (Case No. 19-40430); and West Main Station Development, LLC (Case No. 19-40433). The following mailing address can be used for the consolidated Debtor with respect to these cases: c/o David Wallace, Chapter 11 Trustee, 4131 North Central Expressway, Suite 775, Dallas, Texas 75204.

## TABLE OF CONTENTS

I. INTRODUCTION AND OVERVIEW ................................................................................1

II. RULE 12 STANDARD ........................................................................................................ 2

III. APPLICABILITY OF RULE 9 HEIGHTENED PLEADING STANDARD ............................... 4

IV. TRUSTEE'S RESPONSES TO SPECIFIC ALLEGATIONS ....................................................... 7

    A. ACTUAL FRAUDULENT TRANSFER (FIRST AND THIRD CAUSES OF ACTION) ......................................7

        1. *TBG's Involvement in the Fraudulent Transfer* ........................................................................7

        2. *TBG's Purported Confusion Over the Term "TBG Transfer"* ................................................. 10

    B. CONSTRUCTIVE FRAUDULENT TRANSFER (SECOND, FOURTH, AND FIFTH CAUSES OF ACTION) .......12

        1. *Solvency* ........................................................................................................................12

        2. *Reasonably Equivalent Value* ........................................................................................14

    C. VIOLATION OF TEXAS SECURITIES ACT (SIXTH CAUSE OF ACTION) ................................................15

        1. *Relevance of Guess and Carter Allegations in Complaint* ........................................................15

Case 21-04019   Doc 7   Filed 04/07/21   Entered 04/07/21 14:42:18   Desc Main
                        Document      Page 3 of 20

## Table of Authorities

**Cases**
*Asarco LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008) ............................ 14
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 3, 14
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 2, 3, 14
*Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157 (5th Cir. 1982) ..................... 4
*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) .............................. 2
*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ................................................................ 3
*Flushing Sav. Bank v. Parr*, 81 A.D. 2d 655 (N.Y. 2d 1981) ............................................ 5
*Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*,
    916 F.2d 528, 535 (9th Cir. 1990) ................................................................... 5
*In re American Properties, Inc.*, 14 B.R. 637 (Bankr. Kan. 1981) .................................. 8, 9
*In re Hinsley*, 201 F.3d 638 (5th Cir. 2000) ............................................................ 14
*In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557 (Bankr. N.D. Cal. 1994) ................... 14
*Janvey v. Alguire*, 846 F. Supp. 2d 662 (N.D. Tex. 2011) .............................................. 5
*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, (5th Cir. 1982) ... 2
*Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ................. 3
*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................................ 2
*Retz v. Samson (In re Retz)*, 606 F.3d 1189 (9th Cir. 2010) .......................................... 9
*Shapiro v. Wilgus*, 287 U.S. 348 (1934) ............................................................... 8, 9
*Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974) ......................................................... 2
*Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562 (7th Cir. 1989) .......... 9
*Stanley v. US Bank Nat'l Ass'n (In re TransTexas Gas Corp.)*, 597 F.3d 298 (5th
    Cir. 2010) .................................................................................................. 14
*Sterling Trust Co. v. Adderly*, 168 S.W.3d 835 (Tex. 2005) ......................................... 15
*Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) ............................................. 5, 12
*Whitaker v. City of Houston*, 963 F.2d 831 (5th Cir. 1992) ......................................... 4
*Wiggains v. Reed (In re Wiggains)*, 848 F.3d 655 (5th Cir. 2017) ................................. 9
*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993) ............................................. 4
*Wing v. Horn*, 2009 U.S. Dist. LEXIS 77445, 2009 WL 2843342, at *5 (D. Utah 2009) .... 5
**Statutes**
11 U.S.C. § 548 ............................................................................................... 10
Texas Business and Commerce Code § 24.005(a) ................................................... 10
Texas Securities Act ......................................................................................... 15

**Rules**
Fed. R. Civ. P. 8 ........................................................................................ 3, 6, 11
Fed. R. Civ. P. 9 ........................................................................................ 2, 4, 5, 6
Fed. R. Civ. P. 12 ..................................................................................... 1, 2, 11, 14
Fed. R. Civ. P. 15 ............................................................................................... 4

**Treatises**
5 Collier on Bankruptcy ¶ 548.04[1] ...................................................................... 6
5 Collier on Bankruptcy ¶ 548.05[3][a] ................................................................ 13

David Wallace (the "**Trustee**"), as Chapter 11 Trustee for the bankruptcy estate of CFO Management Holdings, LLC (the "**Debtor**")[2] and with its now-consolidated Subsidiary Debtors, the "**Debtors**") and, following the March 31, 2021 effective date of the confirmed plan of liquidation in the above-referenced bankruptcy case, Liquidation Trustee of the CFO Management Holdings Liquidation Trust, files this Response in Opposition to the Motion to Dismiss Complaint (Adv. Docket No. 6) (the "**Motion**") filed by TBG Lending, LLC ("**TBG**" or "**Defendant**"), and would respectfully show the Court as follows:

**I.  INTRODUCTION AND OVERVIEW**

1.  Despite the fact that the federal rules of civil procedure's liberal pleading standards require courts to overrule motions brought under Rule 12(b)(6) in all but the rarest circumstances, the Defendant seeks dismissal of the Complaint in its entirety for allegedly failing to state a single claim upon which relief may be granted.

2.  Defendant repeatedly accuses the Trustee of pleading with insufficient "specificity" or being too "conclusory" in the Complaint. In doing so, the Defendant fails to apply the correct pleading standard. The level of detail Defendant demands goes beyond what is required of pleadings under the Federal Rules applicable to bankruptcy adversary proceedings.

3.  Defendant also argues that Rule 9's "heightened pleading" standard definitely applies when a pleading asserts a cause of action for actual fraudulent transfer under

---

[2] Capitalized terms not defined herein have the meaning provided in the Trustee's original Complaint in this adversary proceeding.

either the Bankruptcy Code or the Texas Uniform Fraudulent Transfer Act. It doesn't. But even if it did, the Complaint satisfies the Rule 9 standard.

4. Because the Defendant applies the wrong standards to the Complaint throughout, and because the Complaint satisfies the actual standards under the federal rules as interpreted by applicable and case-law precedents, the Motion should be denied.

## II. RULE 12 STANDARD

5. "A motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." When considering a Rule 12(b)(6) motion to dismiss, a court must generally accept the factual allegations contained in the complaint as true. *Kaiser*, 677 F.2d at 1050. While "[f]actual allegations must be enough to raise a right to relief above the speculative level," the Supreme Court of the United States explained that a complaint "does not need detailed factual allegations . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")).

6. Following up on its analysis in *Twombly*, the Supreme Court elaborated on what is necessary to survive a motion to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In other words, as explained by the Fifth Circuit, "[t]he court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. " *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*).

7. Before *Twombly* and its progeny, courts applied an even more liberal "fair notice" standard—namely, a complaint need only contain "a short and plain statement . . . showing that the pleader [was] entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 548 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This "notice" requirement is still present in the Federal Rules. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"); *see also Iqbal* , 556 U.S. at 678 ("the pleading standard Rule 8 announces **does not require 'detailed factual allegations,'** but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . .") (emphasis added).

8. In the Complaint, the Trustee has more-than-sufficiently demonstrated legally cognizable claims that satisfy the plausibility standard. If, however, the Court finds that

any cause of action asserted in the Complaint fails to state a claim, the Trustee should be afforded an opportunity to amend the Complaint in lieu of outright dismissal, and the Trustee hereby requests such leave.[3]

### III. APPLICABILITY OF RULE 9 HEIGHTENED PLEADING STANDARD

9. TBG asserts that "[c]ourts within the Fifth Circuit have applied Rule 9(b) to fraudulent transfer claims where the plaintiff pleads actual fraudulent intent." (Mot. ¶ 16). This assertion, while not outright false, leaves the misimpression that the question of whether Rule 9's heightened pleading standard for fraud claims applies to actual-fraudulent-transfer claims is settled. It is not.

10. The Fifth Circuit has "not previously addressed the question of whether an actual fraudulent transfer claim is subject to Rule 9(b)'s heightened pleading requirements." *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 118 (5th Cir. 2019) (noting that "the district courts in this circuit are not in unanimity on this question."). Although the First, Second, and Eighth Circuits have opined that Rule 9 applies to actual-fraudulent-transfer claims, "[t]he Fourth, Seventh, Tenth, and Eleventh Circuits have not yet addressed the issue, and the district courts in the Fourth, Tenth, and Eleventh Circuits, like [the Fifth], are divided. *Id.*

11. And while it is true that some District and Bankruptcy Courts within the Fifth Circuit have held that Rule 9's heightened pleading standard applies to actual-fraudulent-

---

[3] In this Circuit, when a complaint is dismissed, but the action is not terminated altogether, the plaintiff may amend under Rule 15(a) with permission of the court, especially when the case is in its early stages. *See Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting Fed. R. Civ. P. 15(a)); *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982) (explaining Rule 15(a) requires trial court to grant leave to amend freely, language of rule "evinces a bias in favor of granting leave to amend").

transfer claims, other have not. For example, in *Janvey v. Alguire*, 846 F. Supp. 2d 662 (N.D. Tex. 2011), the United States District Court for the Northern District of Texas held that Rule 9 does not apply to actual-fraudulent-transfer claims under the Texas UFTA. Citing a number of cases, Judge Godbey explains that the "heightened pleading" standard for fraud makes no sense in the context of an actual-fraudulent-transfer allegation because the intent of the defendant is not at issue. Rather, it is the debtor's intent, not the transfer recipient's, that is relevant: "In the fraudulent transfer context '[t]here is no allegation that the [d]efendant committed any act of fraud; indeed, the defendant's conduct is simply not an element of the Receiver's claim.'" *Id.* at 675-76 (quoting *Wing v. Horn*, 2009 U.S. Dist. LEXIS 77445, 2009 WL 2843342, at *5 (D. Utah 2009).

12. The reasoning of courts declining to apply Rule 9's heightened pleading to actual-fraudulent-transfer claims is sound. The purpose of Rule 9's heightened pleading for fraud is to put the defendant on sufficient notice to respond to allegations that involve a specific fraudulent intent on the part of the defendant as an element of the claim. Such an element is not present in an actual-fraudulent transfer claim under either the Bankruptcy Code or UFTA. To prevail on the merits of his actual-fraudulent-transfer claims, the Trustee need not prove anything at all with respect to the ***Defendant's*** intent—he need only prove the ***Debtors'*** intent in effectuating the challenged transfer was to hinder or delay or defraud creditors. Indeed, the Trustee can prevail on his actual-fraudulent-transfer claims even without proving fraudulent intent on the Debtors' part. The test is disjunctive, not conjunctive, which means that the Trustee can prevail even if he proves only that the Debtors made the transfer with the intent to hinder or delay

payment to creditors. Hindrance, delay, and fraud are "distinct elements, any one of which is sufficient to render the transfer fraudulent." 5 Collier on Bankruptcy ¶ 548.04[1] at 548-23; *Flushing Sav. Bank v. Parr*, 81 A.D. 2d 655, 656 (N.Y. 2d 1981) (noting that "by the use of the disjunctive, 'hinder' and 'delay' exist independently of an intent to defraud"). This is all the more reason not to apply Rule 9's heightened pleading standard to the Trustee's asserted causes of action.

13. Nevertheless, even if the Court were to find that Rule 9 applies, the Complaint satisfies Rule 9 with respect to the actual-fraudulent-transfer claims because the Trustee has adequately pleaded facts sufficient to establish the Debtors' intent to hinder, delay, or defraud creditors. The Fifth Circuit has held that pleading facts establishing a Ponzi scheme is sufficient to satisfy the pleading requirements for an actual-intent fraudulent-transfer claim. *See Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) ("The Receiver's proof that RDI operated as a Ponzi scheme established the fraudulent intent behind transfers made by RDI."); *Alguire*, 846 F. Supp. 2d at 672 ("The Receiver therefore may establish fraudulent intent by showing that the Stanford enterprise operated as a Ponzi scheme."). The Ninth Circuit has held the same. *See Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) (holding that "the debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme.").

14. The Trustee's Complaint pleads facts detailing the Ponzi scheme orchestrated by Bob Guess and Philip Carter, who controlled the Debtors. (Mot. at 4 and 13, ¶¶ 7, 34 &

35). For this reason, the Complaint satisfies the applicable pleading requirements not only of Rule 8 but also of Rule 9 (should the Court determine that Rule 9 applies).

### IV. TRUSTEE'S RESPONSES TO SPECIFIC ALLEGATIONS

#### A. *Actual Fraudulent Transfer (First and Third Causes of Action)*

##### 1. **TBG's Involvement in the Fraudulent Transfer**

15. TBG cites the Complaint's description of activities by Bob Guess and Philip Carter in conducting "a massive years-long multi-million-dollar consumer-fraud scheme"—funded in part by TBG's $15.6 million in loans—as mere "conclusory allegations" insufficient to sustain a fraudulent-transfer claim against TBG because the "Complaint fails to provide fact-specific allegations detailing TBG's involvement in the fraudulent scheme." (Mot. ¶¶ 3, 7). But as discussed above, allegations regarding TBG's involvement more specific than what are in the Complaint are not required to sustain a cause of action for actual fraudulent transfer. For an actual fraudulent transfer, it is the Debtors' intent to hinder or delay or defraud that is relevant.

16. Thus, the Trustee need only allege facts sufficient to show that the transfer the Trustee seeks to avoid (in this case, the TBG Transfer, as defined in paragraph 9 of the Complaint) had the intended effect of hindering *or* delaying *or* defrauding creditors of the Borrowers. The Complaint makes it crystal clear that the Debtors intended that completing the TBG Transfer would hinder, delay, or defraud at least some of the Borrowers' creditors. (*See, e.g.*, Compl. ¶ 27).

17. TBG is liable if the Debtors intended the TBG Transfer to result in a delay of payment for one or more of the Debtors' creditors. *See In re Pajaro Dunes Rental Agency,*

*Inc.*, 174 B.R. 557, 572 (Bankr. N.D. Cal. 1994); *In re American Properties, Inc.,* 14 B.R. 637, 643 (Bankr. Kan. 1981). That certain of the Borrowers' creditors may have benefited from the TBG Transfer is irrelevant. If any of the Borrowers' creditors would be hindered or delayed by the transfer, then TBG is liable. In *Shapiro v. Wilgus*, 287 U.S. 348 (1934), the Supreme Court of the United States upheld this long-standing principle in debtor–creditor law. Writing for the Court, Justice Cardozo explained that "[a] conveyance . . . is illegal if made with an intent to hinder and delay [creditors]. Many an embarrassed debtor holds the genuine belief that, if suits can be staved off for a season, he will weather the financial storm and pay his debts in full. The belief, even though well founded, does not clothe him with a privilege to build up obstructions that will hold his creditors at bay." *Id.* at 355.

18. In *Shapiro*, Herbert Robinson sought forbearance from his creditors. *Id.* at 352. Although most of his creditors consented to delayed payment, two did not and threatened to sue. Robinson then transferred to a newly formed corporation all of his property in exchange for stock and an assumption of his debts and immediately put the new company into receivership to protect it from suit by the non-consenting creditors. Robinson believed that his stratagem would enable him to pay all his debts and even realize a return to equity. *Id.* at 353. The creditors sued, arguing that the transfer was fraudulent. In spite of Robinson's supposed pure motives, the Supreme Court agreed with the two creditors and held that the debtor's knowledge that even one creditor would be delayed was sufficient to support a finding of actual intent to hinder, delay, or defraud creditors. *Id.* at 354.

19. The principle articulated in *Shapiro* still governs fraudulent-transfer cases under both the Bankruptcy Code and the state Uniform Fraudulent Transfer Acts. For example, in the *American Properties* case, a business owner sought and obtained bank financing for one of his insolvent companies in a complicated transaction that saddled one of his other companies with debt. 14 B.R. at 643. The Bankruptcy Court held that the transaction was actually fraudulent even though "[t]here was no element of malice towards the creditors . . . because [the owner] genuinely hoped the storm would pass." *Id.* Although [the owner] did not enter the transaction with an intent to defraud American's creditors, he did enter it "with full knowledge harm would come to the creditors," hindering or delaying their ability to receive satisfaction of their debts. *Id.* The transfer was unwound despite Coleman's motive to save one insolvent company and buy time to pay the creditors of one of his other companies.

20. The Fifth Circuit has cited the *Shapiro* case approvingly in a case affirming a bankruptcy court's avoidance of a marriage partition agreement: "The phrase 'intent to hinder, delay, or defraud' is not defined in the Bankruptcy Code. We find relevant meaning in the fact that the phrase is stated in the disjunctive, which signifies that an intent to hinder or to delay or to defraud is sufficient." *Wiggains v. Reed (In re Wiggains)*, 848 F.3d 655, 661 (5th Cir. 2017) (also citing *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (finding it "sufficient if the debtor's intent is to hinder or delay a creditor"); *Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 568 (7th Cir. 1989) (denying discharge where it "[wa]s clear that [the debtor] intended to hinder or delay his creditors, even if he had no intent to defraud them")).

21. The Complaint contains numerous specific factual allegations (including, most specifically, paragraphs 7-30) that the TBG Transfer had the effect of hindering or delaying the payment of the Borrowers' creditors. TBG may believe it has defenses to these claims, but it cannot seriously contend that the Complaint suffers from a fatal pleading defect on the question of the Debtors' intent to hinder or delay payment to creditors.

### 2. TBG's Purported Confusion Over the Term "TBG Transfer"

22. TBG expresses confusion over the definition of "TBG Transfer" used in the Complaint, (Mot. at 9-10, ¶¶ 21-25), claiming uncertainty over the "who," "what," and "when" that comprise the TBG Transfer. But the Complaint is explicit about what the Trustee seeks to avoid and recover for the benefit of the estate's unsecured creditors. The Bankruptcy Code allows the Trustee to avoid and recover "any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor . . . ." 11 U.S.C. 548(a)(1). UFTA allows the Trustee to avoid and recover "[a] transfer made or obligation incurred by a debtor . . . ." Tx. Bus. & Comm. Code § 24.005(a). The "what" of a fraudulent transfer, then, is simply this: an interest of a debtor in property or an obligation incurred by a debtor. In this case, the "whats" are the security interests in property conveyed by Carter-controlled entities to TBG as well as the obligations incurred by Debtors McKinney Executive Suites at Crescent Parc Development Partners, LLC ("**MES**"); Frisco Wade Crossing Development Partners, LLC ("**FWC**"); West Main Station Development, LLC; Christian Custom Homes, LLC; and Kingswood Development

Partners, LLC in connection with the TBG Loans in the amounts of $8.6 million and $7.0 million.

23. The "whos" at issue in the TBG Transfer are also identified. The Complaint alleges that Debtors MES and FWC incurred obligations and entities Philip Carter controlled granted security interests to TBG Funding.[4]

24. Finally, the "when" of the TBG Transfer is also explicitly stated in the Complaint—the TBG Transfers occurred on July 31, 2018:

> Defendant TBG Funding LLC ("TBG") is a Delaware limited liability company that was party, as Lender, to two separate Construction Loan Agreements **dated July 31, 2018** by and between TBG and **Borrowers FWC and MES, under which TBG provided loans to FWC and MES in the amounts of $8.6 million and $7 million respectively** (together, the "TBG Loans"). In exchange for the TBG Loans, Carter and certain entities he controlled **granted security interests to TBG** and executed guaranties in favor of TBG. The TBG Loan transactions (including both the funding of the TBG Loans and the granting by Carter and the Debtor entities he controlled of these property interests) are referred to herein as the "TBG Transfers."

(Compl. at 4, ¶ 9) (emphasis added).

25. The Complaint clearly and unambiguously identifies the transferors, the transferees, the nature of the exchange (loan funding for obligation to repay and grant of security interests), and the date. This is more than sufficient to satisfy Rule 8's liberal pleading requirements and to withstand a motion to dismiss under Rule 12(b)(6).

---

[4] Debtors West Main Station Development, LLC, Christian Custom Homes, LLC, and Kingswood Development Partners, LLC also incurred obligations with respect to one of the two loans. The Trustee is not in possession of the loan documents, but TBG is. The Trustee expects that more details will be obtained in the discovery process. But the Trustee has alleged more than enough to satisfy the pleading standards under the federal rules.

### B. Constructive Fraudulent Transfer (Second, Fourth, and Fifth Causes of Action)

#### 1. Solvency

26. Regarding the Trustee's for constructive-fraudulent-transfer causes of action, TBG argues that the Trustee's pleading is deficient because the Complaint lacks specific allegations regarding the Borrowers' solvency (Mot. at 12, ¶ 31). But the Complaint clearly, if succinctly, describes in some detail the way the Guess/Carter fraudulent scheme operated to bilk new investors to pay earlier investors, using various fraudulent means. As TBG itself acknowledges, the Complaint refers multiple times to the "Ponzi"-type nature of the enterprise. Despite this, TBG asserts that "the Complaint does not allege that FWC and MES are involved in a Ponzi scheme." (Mot. at 12, ¶ 32). TBG's assertion is baseless, as paragraphs 20-25 of the Complaint state explicitly that Carter used FWC and MES to obtain the funding he needed to keep his scheme going: "It was to fund this construction and other Subsidiary Debtor activity in furtherance of Carter's fraudulent scheme that MES, FWC, and other Carter-controlled entities entered into the TBG Loans on July 31, 2018." (Compl. at 8, ¶ 25).

27. The Fifth Circuit has held that facts proving a Ponzi scheme are sufficient to demonstrate insolvency for pleading purposes on constructive-fraud causes of action. A Ponzi scheme is, "as a matter of law, insolvent from its inception." *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). Thus, the Complaint sufficiently pleads insolvency.

28. But even without the presumption of insolvency that establishing the Ponzi-type nature of the Guess/Carter fraudulent scheme, the Complaint contains numerous

specific allegations that support the element of insolvency sufficient to survive a motion to dismiss.

29.     As noted by Collier , "insolvency at a later time may be indicative of insolvency at an earlier time . . . ." 5 Collier on Bankruptcy ¶ 548.05[3][a]. The Debtors' bankruptcy filing less than seven months after the TBG Transfer occurred thus supports the inference that the Debtors were insolvent at the time of the TBG Transfer.

30.     TBG incorrectly asserts that "Plaintiff fails to plead any fact regard [sic] Debtor's or Subsidiary Debtor's [sic] insolvency on the date of the transfers." (Mot. at 12, ¶ 31). To the contrary, paragraphs 29, 37, and 52 of the Complaint assert that FWC and MES were insolvent or rendered insolvent as a result of the TBG Transfer. Additionally, the Complaint is replete with other factual allegations that provide substantial plausible support for the allegation that the Debtors were insolvent at the time of the TBG Transfer, including the following:

- Paragraph 12 of the Complaint refers to a "multi-million-dollar consumer fraud scheme."

- Paragraphs 13, 16, and 23 of the Complaint all refer to Ponzi payments to investors.

- Paragraphs 19 and 23 of the Complaint discusses the interpleader action, of which TBG should have been aware, that was evidence of Carter-controlled entities not paying debts as they came due.

- Paragraph 21 of the Complaint discusses the lawsuit filed by the Debtors' former construction contractor for breach of contract and foreclosure on liens, again indicating that the Debtors—and specifically the borrowers MES and FWC—were not paying their debts as they came due.

- Paragraph 27 of the Complaint summarizes what TBG knew or should have known concerning the Debtors' ongoing troubles with government agencies, prior lenders, their previous construction contract partners, and

cheated investors, all of which taken together would cause a reasonable person to question whether the Debtors were solvent.

31. The Complaint, therefore, contains sufficiently specific factual allegations regarding insolvency to sustain the causes of action for constructive fraudulent transfer.

### 2. Reasonably Equivalent Value

32. TBG also asserts that that the Complaint "fails to make any allegation of fact that would support the element that no reasonably equivalent value was received." Mot. at 12, ¶ 33. But the Fifth Circuit has instructed that "[t]o measure reasonably equivalent value, we judge the consideration given for a transfer from the standpoint of creditors." *Stanley v. US Bank Nat'l Ass'n (In re TransTexas Gas Corp.)*, 597 F.3d 298, 306 (5th Cir. 2010) (citing *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000) ("The proper focus is on the net effect of the transfers on the debtor's estate, [and] the funds available to the unsecured creditors."); *see also Asarco LLC v. Americas Mining Corp.*, 396 B.R. 278, 337 (S.D. Tex. 2008) ("[t]he determination of whether the debtor received REV should be made from the standpoint of the debtor's creditors, by looking at the net effect of the transfer on the unsecured creditors.").

33. The Complaint sufficiently alleges that, from the Debtors' creditors' perspective, the Debtors did not receive reasonably equivalent value in exchange for the granting to TBG of a lien on the Debtors' most significant and valuable assets.

34. Once again, TBG may believe that it has winning defenses to the substantive claims asserted by the Trustee in the Complaint. But the question for a Rule 12(b)(6) motion is whether the plaintiff has satisfied Rule 8's pleading requirements as interpreted by *Twombly*, *Iqbal*, and their progeny. Under these well-established pleading standards,

TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS COMPLAINT 14

there can be no question that the Complaint adequately pleads causes of action for constructive fraudulent transfer under both the Bankruptcy Code and TUFTA.

### C. *Violation of Texas Securities Act (Sixth Cause of Action)*

#### 1. Relevance of Guess and Carter Allegations in Complaint

35. The allegations concerning the Guess/Carter-engineered fraudulent scheme are relevant not only to the actual-fraudulent-transfer claims under the Bankruptcy Code and UFTA (the First and Third Causes of Action in the Complaint). They are also relevant to the Sixth Cause of Action for TBG's violations of the Texas Securities Act.

36. TBG relies on the case of *Sterling Trust Co. v. Adderly*, 168 S.W.3d 835 (Tex. 2005), for its argument that the Complaint fails to state a claim under the Texas Securities Act. That reliance is misplaced. *Sterling* holds that a defendant may be held liable for aiding and abetting the fraudulent acts of another if the defendant had a "general awareness" of the primary violator's improper activities. *Id.* at 845.

37. Contrary to TBG's assertion, the facts concerning the perpetuation of a years-long massive fraud by the Debtors' principal Philip Carter show that TBG was "subjectively aware of . . . improper activity on the part of the Debtors." (Mot. at 15, ¶ 40). The timing of numerous events that occurred before TBG extended funding to Carter-controlled entities demonstrates that TBG knew about Carter's improper activities. Some of these events were publicly known and others could have been discovered through appropriate due-diligence activities typically undertaken by lenders on multi-million-dollar transactions.

38. The background facts concerning Bob Guess and Philip Carter are included to provide necessary context for the specific factual allegations made in the Complaint that the Defendant was (or should have been) aware of various "red flags" that put TBG—at the very least—on inquiry notice that it should proceed with extreme caution before conducting business with any Carter-controlled entities. These facts are relevant to the Trustee's claims that the TBG Transfer was effected at a time when TBG either knew of the many problems that plagued the Carter-controlled companies or was willfully blind to them. For example, paragraphs 20-22 of the Complaint describe legal disputes that Debtors MES and FWC had been embroiled in with one of their contract counter-parties. The lawsuit brought by Crossland Construction was public knowledge, and the claims asserted (breach of contract and foreclosure of M&M liens) should have put TBG on notice that the Debtors had not been paying their debts as they came due). Paragraphs 19 and 23 of the Complaint refer to another suit involving Carter-controlled companies, the state interpleader action, in which—again—it was clear to anyone inquiring into the nature of the suit, even when taken in the most favorable light, that Carter-controlled entities were having trouble making timely payments to their creditors (in this instance, investors).

39. These specific allegations are provided as predicate to the allegation that "TBG rendered assistance to Carter 'in the face of a perceived risk' that its assistance would facilitate untruthful or illegal activity by Carter and the companies he controlled." (Compl. ¶ 57).

40. Accordingly, the Trustee's Sixth Cause of Action under the Texas Securities Act is sufficiently pleaded, and the Court should deny TBG's motion to dismiss it.

41. For the reasons stated herein, the Trustee requests that the Court deny the Motion and, to the extent necessary, permit the Trustee to amend the Complaint to address any issues the Court designates.

Dated: April 7, 2021

By: /s/ *Judith W. Ross*
Judith W. Ross, State Bar No. 21010670
Frances A. Smith, State Bar No. 24033084
Eric Soderlund, State Bar No. 24037525
Jessica L. Voyce Lewis, State Bar No. 24060956
**Ross & Smith, PC**
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
frances.smith@judithwross.com
eric.soderlund@judithwross.com
jessica.lewis@judithwross.com

**COUNSEL TO CHAPTER 11 TRUSTEE/
LIQUIDATION TRUSTEE DAVID WALLACE**